Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| HÉCTOR PAGÁN RODRÍGUEZ Y/O GLORIANA ORTIZ ALEJANDRO<br><br>Recurridos<br><br>v.<br><br>AUTOMOBILIA CORP.<br><br>Recurrente | KLRA202400581 | REVISIÓN JUDICIAL Procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: CAG-2024-0005836<br><br>Sobre: Compraventa de Vehículos de Motor |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm

Álvarez Esnard, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, 28 enero de 2025

Comparece ante nos Automobilia Corp. ("Automobilia", "la parte querellada" o "la parte recurrente") mediante un *Recurso de Revisión Administrativa.* Nos solicita la revocación de la *Resolución* en rebeldía emitida y notificada el 9 de agosto de 2024 por el Departamento de Asuntos del Consumidor ("DACo"). Por virtud de la misma, dicha agencia declaró *Con Lugar* la *Querella* presentada por el señor Héctor Pagán Rodríguez, la señora Gloriana Ortiz Alejandro y la Sociedad Legal de Gananciales compuesta por ambos ("los recurridos" o "los querellantes"). Consecuentemente, ordenó a que la corporación querellada pagara la suma total de $33,355.92 por el incumplimiento de un contrato de compraventa relacionado con la adquisición de un vehículo de motor.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

## I.

El 6 de marzo de 2024, el señor Pagán Rodríguez, la señora Ortiz Alejandro y la Sociedad Legal de Gananciales compuesta por

ambos radicaron una *Querella* contra Automobilia, Corp. ante el DACo.[1] En ajustada síntesis, alegaron entregaron en *trade in* un automóvil Toyota Tundra (2022). Como parte del acuerdo con la entidad recurrente, relataron que obtendrían un automóvil Porsche por la cantidad de $179,9995. En cuanto al balance adeudado por su anterior automóvil, detallaron que la cantidad ascendía a $81,938.60. Sin embargo, aseveraron que Automobilia asumiría la obligación de saldarlo. Respecto a la adquisición del Porsche, indicaron que las partes pactaron un financiamiento por el pago mensual de $2,097.00.

No obstante, según expusieron los querellantes, Automobilia vendió el Toyota Tundra, mas no saldó la deuda. En adición, señalaron que luego ésta les informó que el financiamiento del Porsche aumentaría al pago mensual de $2,700.00. Amparados en un alegado incumplimiento contractual, solicitaron ante la mencionada agencia las siguientes cuantías: (1) $28,500.00 de pronto y crédito, (2) $2,742.98 por los atrasos en el pago mensual del Toyota Tundra, (3) $612.91 en mantenimiento y pago del seguro del Porsche, y (4) $15,000 en daños y perjuicios.

En respuesta a tales alegaciones, el 2 de abril de 2024, Automobilia sometió una *Moción Asumiendo Representación Legal y Contestación a la Querella*.[2] En esencia, argumentó que la unidad tomada en *trade-in* tuvo un *up-side* en su valoración, por lo cual, se consideró un bono de $8,500.00 de parte del *dealer*. Respecto al balance adeudado del vehículo de motor Toyota, aceptó que se pactó asumir tal obligación. Sin embargo, alegó que no emitió el pago mensual de $2,097.00, toda vez que la parte querellante no presentó sus planillas de contribución sobre ingreso ante el Caribe Federal

---

[1] Apéndice de la parte recurrente, págs. 6-11.
[2] Apéndice de la parte recurrente, págs. 12-21. Cabe destacar que, en su comparecencia la representación legal de Automobilia incluyó la correspondiente dirección para recibir las notificaciones vinculadas con el caso administrativo. Véase, además, Apéndice de la parte recurrente, pág. 21.

Credit Union. En cuanto a la adquisición del Porsche, sostuvo que el vendedor se comunicó con los querellantes para indicarles que el pago sería $2,700.00 en lugar de $2,097.00, pues no se pudo gestionar el financiamiento con entidad bancaria. Por lo anterior, peticionó que el DACo declarara *Sin Lugar* la *Querella*, y consecuentemente, decretara el archivo con perjuicio del caso más condenara a la parte querellante al pagar $7,412 en concepto de uso y disfrute de la unidad vehicular adquirida.

Continuado el pleito administrativo, el 4 de abril de 2024, Automobilia presentó una *Moción Solicitando Producción de Documentos* al amparo de la Regla 7.1(f) del Reglamento Adjudicativo (6219) del Departamento de Asuntos del Consumidor.[3] Específicamente solicitó que la parte querellante presentara copia de la evidencia documental, electrónica, audiovisual o tangible que utilizaría en la celebración de la vista administrativa.

Ese día, de manera similar, los querellantes sometieron una *Moción Suplicando Descubrimiento de Prueba al Amparo de la Regla 7.1(f)* en la cual requirieron que la Automobilia notificara cuál evidencia y testigos presentarían durante la vista administrativa.[4] También presentaron una documento adicional intitulado *Moción Suplicando Vista Administrativa* en la cual certificaron haber notificado copia fiel y exacta al correo electrónico de la representación legal de la parte querellada.[5]

En consecuencia a este última solicitud, el 8 de abril de 2024, el DACo emitió y notificó *Citación a Vista Administrativa* a celebrarse el 17 de mayo de 2024.[6] Sobre este decreto agencial, conviene destacar que, surge del expediente sometido por el DACo, un documento intitulado *Notificación de Vista Administrativa* que

---

[3] Apéndice de la parte recurrente, págs. 29-30.
[4] Apéndice de la parte recurrente, págs. 33-34.
[5] Apéndice de la parte recurrente, págs. 35-36.
[6] Expediente administrativo de la *Querella* 2024-0005836.

certifica las direcciones a las que la agencia informó dicho trámite. **No obstante, en ese escrito no obra la certificación vinculada con la notificación al representante legal de Automobilia respecto a la aludida vista administrativa**. (Énfasis nuestro).

En atención a lo solicitado por los querellantes, 16 de abril de 2024, Automobilia presentó *Moción Sometiendo Evidencia a Ser Usada en la Vista Administrativa y Solicitando Orden* acompañada de los siguientes documentos: (1) orden de venta, (2) tabla sobre movimiento de auto, (3) recibo sobre la compra del Porsche.[7]

Llegado el 17 de mayo de 2024, Automobilia y su representante legal no comparecieron al señalamiento de vista administrativa. Por tanto, el DACo emitió una *Notificación* con el siguiente pronunciamiento administrativo:

> El 8 de abril de 2024, este Departamento notificó citación a vista administrativa. A la misma comparecieron la parte querellante y su representación legal. **Sin embargo, en una revisión del expediente se desprende que la citación a la vista administrativa no le fue notificada al representante legal de la parte Querellada. Con el propósito de garantizar el Debido Proceso de Ley se dejó sin efecto la vista administrativa. En cuanto a la Querellada, Automobilia sí fue notificada y no compareció**.
>
> **Por los fundamentos antes expuestos se emite la siguiente**
>
> **ORDEN**
>
> **La parte querellada, Automobilia Corp. Muestre Causa por la cual no deba ser sancionada ante su incomparecencia ante este Departamento cuando fue debidamente notificada para la vista administrativa del 17 de mayo de 2024.**
>
> **Se ordena a las partes de epígrafe a comparecer a una vista administrativa el 17 de junio de 2024 a las 2:00 p.m. a celebrarse en la Oficina Regional de Caguas, Centro Gubernamental, 1er piso Oficina 103 Caguas, PR bajo los mismos apercibimientos de la citación notificada el 8 de abril de 2024**. (Énfasis nuestro).[8]

Al respecto, obra en el expediente administrativo un escrito intitulado *Notificación y Orden*. Surge de ese documento que, el DACo notificó a la dirección provista por la representación legal de Automobilia el nuevo señalamiento de vista.

---

[7] Apéndice de la parte peticionaria, págs. 37-43.
[8] Expediente administrativo de la *Querella* 2024-0005836.

En vista de lo anterior, el 17 de junio de 2024, el DACo celebró una vista administrativa a la que comparecieron los querellantes acompañados de su representación legal. Sin embargo, no estuvieron presentes la parte querellada ni su abogado.

Luego de evaluar los testimonios ofrecidos y la prueba admitida, el 9 de agosto de 2024, la agencia emitió y notificó *Resolución* en rebeldía en la cual declaró *Con Lugar* la reclamación de la parte querellante.[9] Respecto a la incomparecencia de la parte querellada, aseveró que "[l]a citación a la vista administrativa le fue enviada a su dirección y no vino de vuelta por lo que se presume que fue bien recibida".[10] Así establecido, procedió anotar la rebeldía a tenor con la Sección 3.10 de la Ley de Procedimiento Administrativo Uniforme de Puerto Rico.[11]

En lo pertinente al caso, el DACo formuló trece (13) determinaciones de hechos:

1. La Querellada es un Corporación, registrada en Puerto Rico, con número de registro 416973 con dirección en la carr. Núm. 1 KM 28.0 en Caguas, Puerto Rico. La dirección postal es Urb. Bairoa, Calle Santa María M$ #1164 Caguas, PuertoRico00725.

2. 2. Luego de varias visitas realizadas los Querellantes a la Querellada para el mes de diciembre de 2023, pactaron con la Querellada la compra de un Vehículo de la marca Porche Modelo Carrera S del año 2020 con tablilla JJV-953 (en lo sucesivo el Vehículo).

3. El precio del Vehículo acordado fue la cantidad de $179,995.00. El vendedor que atendió a los Querellantes fue Manuel Tirado (en lo sucesivo el Vendedor).

4. Como parte del contrato de compraventa del Vehículo, los Querellantes le entregaron a la Querellada en cambio (*trade inn*) [sic] un Vehículo de Motor de la marca Toyota Modelo Tundra del año 2022. La Querellada aceptó pagar el balance de cancelación de la deuda con Toyota Credit y se le otorgó un crédito a los Querellantes de $8,500.00 por el Vehículo entregado en *trade inn* [sic].

5. Los Querellantes también le pagaron a la Querellada para el pronto del Vehículo la cantidad de $20,000.00 mediante el Cheque 4504.

6. El Vendedor y los Querellante acordaron que el financiamiento del Vehículo sería de la siguiente forma: un pago mensual de $2,097.00 por la cantidad de 66 meses y un residual de 30%.

---

[9] Apéndice de la parte recurrente, págs. 44-52.
[10] Apéndice de la parte recurrente, pág. 44.
[11] Ley Núm. 38-2017, 3 LPRA sec. 9650.

7. La Querellada le permitió a los Querellantes llevarse el Vehículo sin haber finalizado los trámites del financiamiento.

8. Los Querellantes gastaron en el mantenimiento del Vehículo la cantidad de $466.03 y la cantidad de $146.91 en alfombras.

9. La Querellada, vendió el vehículo de motor dado en *trade inn* [sic] por los Querellantes al poco tiempo. Sin embargo, no efectuó de forma inmediata la cancelación de la deuda con Toyota Credit la cual se efectuó en febrero de 2024 por la cantidad de $81,938.60. Por tal situación el Querellante se vio en la obligación de efectuar dos pagos por la cantidad de $1,371.497 cada uno para un total de $2,742.98.

10. Luego de transcurridos varios días, y los Querellantes no haber recibido ningún documento relacionado al financiamiento del Vehículo, procedieron a comunicarse con la Querellada y el Vendedor. Sin embargo, no recibían respuesta. Finalmente, el Vendedor le indicó que el financiamiento no sería posible con Caribe Federal y que el mismo sería con Popular Auto. Sin embargo, el pago mensual ascendería a la cantidad de $2,700.00. Posteriormente, le indicaron que el pago sería de $2,400.00. Los Querellantes no aceptaron realizar el financiamiento del Vehículo con Banco Popular porque cambiaban los términos y condiciones de financiamientos acordados. Del Vendedor haberle informado que esa mensualidad la Querellante no hubiese suscrito la Orden de Venta del Vehículo.

11. El día de la compraventa la Querellante firmó varias Órdenes de Venta en Blanco. Por tal razón, ninguna de las Ordenes indicaba que el Vehículo fuera financiado con Banco Popular. Por tal razón, la Querellante no aceptó la Orden de Venta que le presentó el Vendedor después donde indicaba que el financiamiento seria con Banco Popular.

12. El 20 de enero de 2024, la Querellada contrat[ó] los servicios de Grúa de AA Towing Service LLC para que fueran a la residencia de los Querellantes y recogieran el Vehículo.

13. El 12 de marzo de 2024, los Querellantes radicaron la Querella de epígrafe a la cual en síntesis indicaron que compraron un Vehículo de la marca Porsche en la Querellada. Como parte del contrato de compraventa dieron en *trade inn* [sic] una guagua de la marca Toyota modelo Tundra a la cual se le dio $8,500.00[.] Que [en] adición le pagaron a la Querellada la cantidad de $20,000.00 de pronto. Que posteriormente la Querellada no le honró el acuerdo de las mensualidades a pagar y ante esa situación no logró realizarse el financiamiento de Vehículo. La Querellada recogió el Vehículo en la Residencia de los Querellantes. Como remedio los Querellantes reclamaron la devolución de $28,500.00 por concepto del crédito de los $8,500.00 del vehículo entregado en *trade inn* [sic] y el pago de los $20,000.00 adicionales para el pronto del Vehículo. Los Querellantes también solicitaron daños económicos por los gastos incurridos en el mantenimiento del Vehículo y las alfombras que se quedaron entro [sic] del Vehículo cuando fue recogido en la residencia de los Querellante. Los Querellantes también reclaman que se les pague los dos pagos que realizaron del Vehículo de Motor Tundra, ascendentes a la cantidad $2,742.98 como resultado de

la Querellada no realizar inmediatamente la cancelación de la deuda con Toyota Credit.[12]

Así establecido, la agencia aludida resolvió que la parte querellada vendió un vehículo de motor a los querellantes mediando una conducta dolosa. De conformidad con lo anterior, decretó la resolución del contrato más la devolución de las prestaciones de los querellantes. Consecuentemente, ordenó a Automobilia que emitiera los siguientes pagos:

1) Pagarle a los Querellantes la cantidad de $28,000.00. Que incluyen la cantidad de $20,000.00 que los Querellantes pagaron de pronto y el crédito de $8.500.00 por el vehículo de marca Toyota Modelo Tundra que los Querellantes dieron en *trade inn* [sic] y que ya fue vendida por la Querellada a otra persona.

2) Como resultado de los daños económicos sufridos por los Querellantes se la ordena a la Querellada a:

   a. Reembolsar a los Querellantes la cantidad de $2,742.98 como del pago de las dos mensualidades efectuadas por los Querellantes relacionadas al vehículo de motor de la marca Toyota modelo Tundra, cuyo balance de deuda no fue cancelado de forma inmediata por la Querellada.

   b. Reembolsar la cantidad $612.94 por concepto de mantenimiento y alfombras de vehículo Porsche.

   c. Pagar a los Querellante la cantidad de $1,500.00 por concepto de honorarios de abogados.[13]

Oportunamente, el 22 de agosto de 2024, Automobilia presentó *Urgente Moción de Relevo de Sentencia al amparo de la Regla 31.3 y 31.3 del Reglamento de Procedimientos Adjudicativos del DACO* acompañada de una *Declaración Jurada* suscrita ante notario.[14] En esencia, alegó que la *Resolución* dictada en su contra le tomó por sorpresa, toda vez que no recibió notificación en torno a la vista administrativa. Argumentó que no procedía la imposición de la sanción drástica, ya que había que apercibirle al respecto. En esa dirección, señaló que la sanción impuesta fue improcedente derecho aun tomando como cierto que la representación legal fue

---

[12] Apéndice de la parte recurrente, págs. 44-46.
[13] Apéndice de la parte recurrente pág. 50.
[14] Apéndice de la parte recurrente, págs. 53-88.

debidamente notificada. Por tanto, peticionó el relevo de la *Resolución* impugnada.

Tras evaluar sus argumentos, el 28 de agosto de 2024, notificada el 30 de agosto de 2024, el DACo emitió *Notificación*, en la cual declaró *No Ha Lugar* la *Moción de Relevo de Resolución al Amparo de la Regla 31.1 y 31.3 del Reglamento de Procedimientos Adjudicativos del DACO.*[15]

En desacuerdo, el 3 de septiembre de 2024, Automobilia sometió una *Urgente Moción Solicitando Reconsideración de Resolución* en la cual reiteró que procede dejar sin efecto la Resolución impugnada, pues no recibió notificación de la vista administrativa.[16] Argumentó que le corresponde al DACo celebrar una vista para evaluar si bajo las exigencias específicas del caso aplica conceder el remedio contemplado en la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2. Eventualmente, la agencia rechazó de plano la aludida solicitud de reconsideración sin emitir pronunciamiento alguno.

Inconforme, el 18 de octubre de 2024, Automobilia recurrió ante este Tribunal de Apelaciones mediante *Recurso de Revisión Administrativa.* En su escrito, presentó los siguientes señalamientos de error:

A. Erró el Honorable DACo al anotarle la rebeldía a la parte Querellada-Recurrente toda vez que ésta no fue debidamente notificada de la Vista Administrativa, lo que tuvo la consecuencia de lograr su incomparecencia a la misma, en clara violación al debido proceso de ley y privándole la oportunidad de defenderse y tener su día en corte.

B. Erró el Honorable DACo al ignorar su expediente administrativo y no notificar a Automobilia Corp., a la dirección que obraba en el expediente, anotar la rebeldía bajo la presunción controvertida de correspondencia no devuelta y ver la vista administrativa en ausencia de la querellada.

C. Erró el Honorable DACo al declarar CON LUGAR la Querella y ordenar el pago al Querellado-Recurrente por la suma de $33,355.92, y a pesar de que ésta última

---

[15] Apéndice de la parte recurrente, págs. 158-159.
[16] Apéndice de la parte recurrente, págs. 89-117.

> nunca fue notificada de la Vista Administrativa, en clara violación al debido proceso de ley.

Sometido el recurso, el 23 de octubre de 2024, esta Curia emitió *Resolución* en la cual ordenó a la parte recurrida a exponer su posición dentro del término de treinta (30) días.

Evaluado detenidamente el caso presente, el 10 de diciembre de 2024, este Tribunal de Apelaciones dictó *Resolución* en la cual requirió al DACo elevar el expediente administrativo CAG-2024-0005836.

Eventualmente, en exceso del término establecido, el 6 de diciembre de 2024, los querellantes recurridos presentaron un escrito intitulado *Alegato de la Parte Recurrida Tribunal de Apelaciones Compraventa Vehículo Motor* acompañado de una solicitud de prórroga fundamentada en un asunto médico-familiar.

En respuesta al decreto judicial, el 26 de diciembre de 2024, el DACo presentó *Moción en Cumplimiento de Orden* y sometió el expediente administrativo solicitado por este foro intermedio apelativo.

Con el beneficio de las comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

## II.
### A. *Facultades adjudicativas del Departamento de Asuntos del Consumidor*

La Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 del 23 de abril de 1973, 3 LPRA sec. 341, según enmendada, faculta a dicha agencia a "adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho". 3 LPRA sec. 341e(d). Véanse, además, *Ortiz Rolón v. Armando Soler Auto Sales, Inc. et al.,* 202 DPR 689, 696 (2019); *Amieiro González v. Pinnacle Real Estate Home Team,* 173 DPR 363, 372 (2008). En virtud de ese precepto, el DACo

tiene el deber de velar el cumplimiento de todas las leyes relacionadas con los derechos de los consumidores. 3 LPRA sec. 341e(d).

A esos fines, el Artículo 6 de la Ley Núm. 5, *supra*, establece los poderes delegados al referido organismo administrativo de la siguiente manera:

> (c) Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. Cuando declare con lugar una querella, el Secretario ordenará al querellado perdidoso que haya procedido con temeridad que pague total o parcialmente los gastos incurridos por el Departamento en su tramitación. El Secretario dispondrá por reglamento los cargos por concepto de gastos que deberá pagar el querellado perdidoso.
>
> (d) Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios aptos conforme a derecho, disponiéndose que las facultades conferidas en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones. 3 LPRA sec. 341e.

A su vez, la agencia referida tiene el deber de "establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos, tanto de reglamentación como de adjudicación, que celebre el Departamento". 3 LPRA sec. 341e.

En armonía con lo anterior, el DACo adoptó el Reglamento de Procedimientos Adjudicativos, Reglamento 8034, 13 de junio de 2011 (Reglamento 8034). Este cuerpo regulador favorece la solución justa, rápida y económica de las querellas presentadas ante el Departamento y provee un procedimiento uniforme. Regla 1, Reglamento 8034, *supra*. Su aplicabilidad se extiende a "las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores, o por el Departamento". Regla 3, Reglamento 8034, *supra*. De igual modo, estas reglas aplican a los procesos adjudicativos impuestos por nueva legislación, exceptuando los términos para llevar a cabo el proceso adjudicativo

cuando alguna ley establece términos distintos, los cuales el Departamento debe adoptar. Íd.

En lo concerniente, la Regla 4(f) establece que consumidor es "[t]oda persona natural, que adquiere o utiliza productor o servicios como destinatario final". Regla 4(f), Reglamento 8034, *supra.* Tal conceptualización resulta acorde con la Regla 4(u), la cual especifica que un querellante es el "[c]onsumidor o representante autorizado que reclama un derecho o servicio en su capacidad personal". Regla 4(u), Reglamento 8034, *supra.* Así pues, un consumidor que exhiba los elementos discutidos ostenta la facultad para presentar ante el DACo una querella.

Acorde con lo discutido, la Regla 4(t) define *Querella* de la siguiente manera:

> Reclamación presentada por un consumidor o su representante autorizado solicitando que le sea reconocido un derecho y concedido un remedio. En adición, es una acción iniciada por el Departamento, para hacer cumplir las leyes y reglamentos, e imponer multas o sanciones. Regla 4(t), Reglamento 8034, *supra.*

Cónsono con lo anterior, el precitado reglamento establece cómo se inicia el proceso de querella:

> Toda querella se inicia y consulta del querellante o del personal del Departamento, donde se expresan los hechos que motivan la reclamación. El Departamento asesorará al querellante sobre los documentos necesarios para radicar la querella. Regla 5.1, Reglamento 8034, *supra.*

Una vez el consumidor radica su querella, la Regla 8 del presente cuerpo reglamentario exige que el DACo notifique debidamente a la parte querellada:

> El Departamento notificará a todos los querellados la querella radicada en su contra. Esta notificación será un aviso escrito de que el querellado deberá contestar la querella en el término de veinte (20) días a partir de la notificación, advirtiendo además que de no recibirse la contestación a la querella en dicho término se le anotará rebeldía. La notificación consistirá en copia del a querella y un aviso escrito de:
>
> > **a) Cualquier vista que señale el Departamento las partes podrán comparecer con abogado, intérprete, transcriptor de récord y deberán comparecer todas las personas citadas bajo el**

> **apercibimiento de la imposición de sanciones en caso de incomparecencia injustificada.**
>
> **b) Una invitación para relacionarse con el expediente.**
>
> **c) Cuando de la relación de hechos contenida en la querella se desprenda una violación a los reglamentos y leyes que administra el Departamento, se podrá referir a la División de Protección para investigación y la acción correspondiente.** Regla 8, Reglamento 8034, *supra.* (Énfasis nuestro).

En cuanto a la formalidad de la notificación, la Regla 8 en los incisos (2), (3) y (4) del Reglamento 8034, *supra,* establece lo siguiente:

> 8.2 La notificación de la querella, por correo ordinario, o cualquier otro medio cuando las partes así lo soliciten por escrito y existan los recursos en el Departamento para llevarlo a cabo, o se llevarán a cabo personalmente cuando las circunstancias así lo ameriten.
>
> 8.3 En caso de notificación personal, el diligenciante certificará su entrega, haciendo constar la fecha, hora y dirección física exacta de la entrega, e identificará por nombre la persona a quien la entregó. Se podrá diligenciar una notificación en las personas que pueden emplazadas conforma a las Reglas de Procedimiento Civil de Puerto Rico de 2009, según enmendadas.
>
> 8.4 Cuando se solicite la notificación de la querella o cualquier otro documento mediante correo electrónico o tele-copiador (fax), se renuncia a la notificación mediante correo ordinario. La fecha y hora, en la confirmación en la confirmación de envío al tele-copiador (fax) receptor solicitado, será la evidencia de haberse notificado los documentos. Sin embargo, el Departamento podrá notificar un documento por correo ordinario cuando existan problemas técnicos de transmisión o los documentos a enviarse sean extensos.

Debidamente notificada la parte querellada, el DACo celebrará una vista administrativa. En dicho procedimiento será permisible la presentación de material probatorio:

> Las partes podrán presentar aquella evidencia documental y testifical incluyendo evidencia de carácter técnico y pericial. El oficial examinador, el Juez Administrativo, Secretario o Panel de Jueces, podrán tomar conocimiento administrativo, a iniciativa propia o a solicitud de parte, sobre aquellos hechos o circunstancias de interés público que son conocidas por todas las personas bien informadas; o que son susceptibles de determinación inmediata y exacta recurriendo a fuentes cuya exactitud no puede ser razonablemente cuestionada. Regla 20.5 de Reglamento 8034.

Al respecto, la Regla 20.2 del Reglamento 8034, *supra*, instaura la normativa relacionada con la notificación de las vistas ante el DACo:

> El Departamento fijará la fecha y la notificará por escrito a las partes que será no antes de quince (15) días de dicha notificación a menos que las partes pacten otra fecha, con la anuencia del Juez u Oficial Administrativo, Secretario o Panel de Jueces que presida los procedimientos. Se le apercibirá al querellante que si no comparece podrá ordenar la desestimación y archivo de la querella por abandono. **Si el querellado no comparece se podrán eliminar sus alegaciones**. El Departamento podrá también condenar al pago de honorarios de abogado o dictar cualquier otra orden que en Derecho proceda. (Énfasis nuestro).

**De conformidad con lo anterior, la Regla 22.2 del precitado reglamento especifica que toda corporación o persona jurídica deberá comparecer por conducto de abogado o un oficial debidamente autorizado a tomar decisiones a nombre de la entidad que representa y a obligar la misma, lo cual vendrá obligado a acreditar mediante resolución corporativa**. Regla 22.2, Reglamento 8034, *supra.* (Énfasis nuestro).

Celebrada la vista agencial, el Juez Administrativo estará en posición de emitir una resolución que exhiba los siguientes elementos:

> La resolución de la querella en sus méritos contendrá una relación de la determinación de hechos probados, la cual se ajustará y tendrá apoyo en el expediente del procedimiento, conclusiones de derecho, y dispondrá lo que en Derecho proceda para su ejecución mediante una orden e incluirá los apercibimientos para solicitar revisión judicial. Regla 26.1, Reglamento 8034, *supra.*

La determinación agencial deberá estar respaldada en evidencia sustancial, es decir, "evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Regla 4(i), Reglamento 8034, *supra.* Incluirá, a su vez, la concesión de remedios correspondientes:

> Toda resolución otorgará el remedio que en derecho proceda aun cuando la parte querellante no lo haya solicitado. Cuando el remedio otorgado sea una orden de hacer o cumplir con un acto determinador deberá contener, (1) cuando surja del expediente o (2) cuando se pueda tener conocimiento administrativo, el importe o valor monetario de la orden, para que en la alternativa de no cumplir con la

misma, la parte obligada compense monetariamente. Regla 27.1, Reglamento 8034, *supra.*

A su vez, se "podrá imponer a la parte perdidosa el pago de costas y honorarios de abogados". Regla 27.3, Reglamento 8034, *supra.*

Ante limitadas circunstancias, la Regla 31.1 del Reglamento 8034, *supra*, permite el relevo de resoluciones administrativas:

> Antes de que expire el término para revisar judicialmente la resolución, a iniciativa propia o a solicitud de parte, el Departamento podrá ordenar la celebración de una nueva vista por cualquiera de los siguientes motivos:
>
> > a) cuando se descubriese evidencia esencial, la cual, a pesar de una diligencia razonable, no pudo descubrirse ni presentarse en la vista;
> >
> > b) cuando la justicia sustancial lo requiera. El Departamento podrá conceder una nueva vista administrativa a todas o cuales quiera de las partes y sobre todas o parte de las cuestiones litigiosa.

A su vez, la Regla 31.3 del aludido Reglamento dispone que **"[e]l Departamento podrá relevar a una parte o a su representante legal de una resolución, orden o procedimiento por las razones y bajo los términos señalados en la Regla 49.2 de Procedimiento Civil, según enmendada**". Regla 31.3, Reglamento 8034, *supra.* (Énfasis nuestro).

Por último, el Reglamento 8034, *supra*, provee un proceso para la imposición de sanción en caso de incumplimiento de órdenes administrativas. Sobre este particular, la Regla 23 del precitado cuerpo legal dispone lo siguiente:

> Cuando una Parte dejare de cumplir con un procedimiento establecido en este reglamento, o una orden del Secretario, el Funcionario, Secretario o Panel de Jueces que presida la vista administrativa podrá a iniciativa propia o instancia de parte imponer una sanción económica a favor del Departamento o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada a la parte o a su abogado, si este último es responsable del incumplimiento. Si la parte sancionada incumple con el pago de la sanción se podrá ordenar la desestimación de la querella **si es el querellante o eliminar sus alegaciones si es el querellado**. Regla 23, Reglamento 8034, *supra.* (Énfasis nuestro).

Cabe señalar que, la aplicabilidad de las normas procesales no constituye una medida estricta:

**Las Reglas de Procedimiento Civil y de Evidencian no serán de estricta aplicación a las vistas administrativas, sino en la medida en que el Funcionario o Panel de Jueces que presida la vista o el Departamento estime necesario para llevar a cabo los fines de la justicia.** Regla 24, Reglamento 8034, *supra.* (Énfasis nuestro).

### B. Anotación de rebeldía

En nuestro esquema procesal, la anotación de rebeldía es un mecanismo que procura "disuadir a aquellos que recurran a la dilación de los procedimientos como una estrategia de litigación". *González Pagán et al. v. SLG Moret-Brunet,* 202 DPR 1062, 1069 (2019). Esta alternativa procesal es un remedio coercitivo contra una parte adversaria a la cual, habiéndosele concedido la oportunidad de refutar la reclamación, por su pasividad o temeridad opta por no defenderse. *Ocasio v. Kelly Servs.,* 163 DPR 653, 671 (2005).  A esos fines, la Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1, delimita los escenarios que permiten imponer la anotación de rebeldía:

> Cuando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o Secretaria anotará su rebeldía.
>
> El tribunal a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).
>
> Dicha anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).
>
> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.

Nótese que el foro adjudicador puede ordenar la anotación cuando la parte demandada o querellada: (1) no comparece después de haber sido emplazada, (2) no se defiende mediante moción (3) ni presenta oportunamente la contestación a la demanda. *Mitsubishi Motor v. Lunor y otros,* 212 DPR 807, 824 (2023); *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 589 (2011). De igual manera, procede la anotación cuando "una de las partes en el pleito ha incumplido con algún mandato del tribunal, lo que motiva a éste a

imponerle la rebeldía como sanción". *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93, 100 (2002). En tales casos, "[t]an pronto se declare la rebeldía se dan por admitidos todos los hechos bien alegados en la demanda o la alegación que se haya formulado en contra del rebelde y se autoriza al tribunal para que dicte sentencia, si esta procede como cuestión de derecho". *Mitsubishi Motor v. Lunor y otros, supra*, pág. 824; *Rivera Figueroa v. Joe's European Shop, supra*, pág. 590.

Ahora bien, los entes adjudicativos no son meros autómatas obligados a conceder indemnizaciones por estar dilucidándose un caso en rebeldía. *Álamo v. Supermercado Grande, Inc., supra*, pág. 102. La anotación de rebeldía se debe dar dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción. *Rivera Figueroa v. Joe's European Shop, supra*, pág. 590. **Pese a que la rebeldía constituye un mecanismo procesal discrecional, ésta no se sostendrá ante el ejercicio burdo o injusto**. Íd. (Énfasis nuestro).

Por tal motivo, nuestro ordenamiento provee diversas alternativas para dejar sin efecto una anotación de rebeldía dictada erróneamente. En primer lugar, la parte interesada puede solicitar el levantamiento de la anotación al amparo de la Regla 45.1 de Procedimiento Civil, *supra*. En lo pertinente, en *Rivera Figueroa v. Joe's European Shop, supra*, pág. 592, el Tribunal Supremo de Puerto Rico delineó la siguiente interpretación en torno a la aludida regla:

> [S]i un codemandado a quien se le anota la rebeldía por alegadamente no haber contestado en el término, puede probar que sí había contestado y que la anotación de la rebeldía en su contra obedeció a una confusión por parte del Secretario o la Secretaria ante los múltiples codemandados en el expediente, su remedio es, de igual manera, solicitar que se levante la rebeldía por error en la implementación de la Regla 45.1 de Procedimiento Civil, supra. Esto es, la parte no dejó de presentar alegaciones o de defenderse, sino que la anotación obedeció a un error del tribunal.

En tal circunstancia, el "fundamento en derecho para lograr tal levantamiento sería el incumplimiento por parte del promovente con la Regla 45.1 de Procedimiento Civil, *supra*". Íd. Esta disposición procesal no requiere demostrar la existencia de causa justificada.

De no aplicar el análisis anterior, corresponde identificar si media justa causa para levantar la anotación de conformidad con la Regla 45.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.3. Esta regla establece que "[e]l tribunal podrá dejar sin efecto una anotación de rebeldía por causa justificada, y cuando se haya dictado sentencia en rebeldía, podrá asimismo dejarla sin efecto de acuerdo con la Regla 49.2". Regla 45.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.3. Sobre este particular, abordaremos detalladamente en el próximo apartado.

### C. *Levantamiento de la anotación de rebeldía al amparo de la Regla 49.2 de Procedimiento Civil*

En lo concerniente a la anotación de rebeldía, la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R.49.2, permite evaluar la concesión del remedio según los parámetros establecidos por dicho precepto. En tales casos, la aludida regla provee un mecanismo procesal para solicitar al foro primario el relevo de los efectos de una orden o procedimiento siempre y cuando medien los fundamentos legales. *García Colón et al. v. Sucn. González,* 178 DPR 527, 539 (2010). Véase, también, *De Jesús Viñas v. González Lugo*, 170 DPR 499, 509 (2007).

A esos fines, la Regla 49.2 de Procedimiento Civil, *supra,* delimita las circunstancias que motivan el levantamiento de la orden de anotación de rebeldía:

(a) error, inadvertencia, sorpresa o negligencia excusable;

(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

**(c)** fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa

representación u otra conducta impropia de una parte adversa;

(d) **nulidad de la sentencia;**

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. 32 LPRA Ap. V, R.49.2.

Así pues, esta regla permite al tribunal: (a) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento; (b) conceder un remedio a una parte que en realidad no hubiere sido emplazada, y (c) dejar sin efecto una sentencia por motivo de fraude al tribunal. *De Jesús Viñas v. González Lugo*, *supra*, pág. 510.

En *Neptune Packing Corp. v. Wackenhut Corp.*, 120 DPR 283, 294 (1988), el Máximo Foro extendió los criterios de la Regla 49.2 de Procedimiento Civil, *supra*, a aquellos casos relacionados con la anotación de rebeldía:

> Expresamente sostenemos que los criterios inherentes a la Regla 49.2 de Procedimiento Civil, *supra*, tales como si el peticionario tiene una buena defensa en sus méritos, el tiempo que media entre la sentencia y la solicitud de relevo, y el grado de perjuicio que pueda ocasionar a la otra parte la concesión del relevo de sentencia, son igualmente aplicables cuando se solicita que una sentencia dictada en rebeldía sea dejada sin efecto.

En tales escenarios, la Regla 49.2 de Procedimiento Civil, *supra*, debe "ser interpretada liberalmente y cualquier duda debe ser resuelta a favor de la parte que solicita que se deje sin efecto la sentencia". *Náter v. Ramos*, 162 DPR 616, 625 (2004). Véase, también, *Díaz v. Tribunal Superior*, 93 DPR 79 (1966). El aludido precepto reglamentario provee un justo balance entre dos intereses conflictivos de nuestro ordenamiento jurídico. Por una parte, aspira a "que todo caso se resuelva justamente, mientras que por otro lado se encuentra el interés de que los litigios concluyan." *HRS Erase v.*

*CMT,* 205 DPR 689, 698 (2020) (citando a *García Colón et al. v. Sucn. González, supra,* pág. 540).

Ahora bien, el reconocimiento de esta acción no es una llave maestra para dejar sin efecto sentencias válidamente dictadas. *García Colón et al. v. Sucn. González, supra,* pág. 541; *Rivera v. Jaume,* 57 DPR 562, 574 (2002). Cabe destacar que, el mecanismo de reapertura dispuesto en la Regla 49.2 de Procedimiento Civil, *supra,* no configura un remedio "para reabrir a capricho el pleito ya adjudicado". *Piazza Vélez v. Isla del Rio, Inc.,* 158 DPR 440, 448 (2003). La concesión del relevo de sentencia es un asunto altamente discrecional, por lo que es necesario demostrar que existen razones que justifican el remedio solicitado. *Reyes v. ELA et al.,* 155 DPR 799, 812 (2001).

Por ello, se requiere del promovente una demostración por preponderancia de la prueba de hechos justifican la moción. a J. A. Cuevas Segarra, *Tratado de derecho procesal civil,* 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 1409. No obstante, este remedio no está disponible para corregir errores de derecho o errores de apreciación o valoración de la prueba que debieron presentarse a través de un recurso de revisión apelativa o reconsideración. *Peña Lacern v. Martínez Hernández,* 210 DPR 425, 439 (2022); *García Colón et al. v. Sucn. González, supra,* pág. 542. A su vez, el promovente de la solicitud de relevo de sentencia deberá presentarla "dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia". Regla 49.2 de Procedimiento Civil, *supra.* No obstante, "si una sentencia es nula, la parte promovedora de una moción de relevo de sentencia no está limitada por el término de seis meses expuesto". *HRS Erase v. CMT, supra,* pág. 699

**En ese sentido, una sentencia reviste nulidad cuando se ha dictado sin jurisdicción o cuando al dictarla se ha**

**quebrantado el debido proceso de ley**. *García Colón et al. v. Sucn. González, supra*, pág. 543; *Figueroa v. Banco de San Juan, supra*, pág. 688. (Énfasis nuestro). En torno al debido proceso de ley, el profesor Rafael Hernández Colón explica que "pueden haber tantas manifestaciones del mismo como principios del debido proceso existen y que se hayan quebrantado en un caso en especial". R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 4808, pág. 457.

### D. Debido proceso de ley en el derecho administrativo

Nuestro ordenamiento constitucional reconoce el derecho a un debido proceso de ley en toda actuación en la cual el Estado intervenga con la vida, la libertad o la propiedad de una persona. Véase Artículo II, Sección 7, Constitución de Puerto Rico; Enmiendas V y XIV de la Constitución de los Estados Unidos. Const. P.R., Art. II, Sec. 7, LPRA, Tomo 1; Const. EE. UU., LPRA, Tomo I. Mediante tales principios se garantiza que toda persona tenga un proceso justo con las debidas garantías que ofrece la ley tanto en el ámbito judicial como administrativo. *Com. Elect PPD v. CEE et al.*, 205 DPR 724, 743 (2020); *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012).

En esa dirección, esta protección constitucional abarca dos vertientes: la sustantiva y la procesal. En cuanto a la vertiente sustantiva, esta busca proteger y salvaguardar los derechos fundamentales de las personas. *PVH Motor v. ASG*, 209 DPR 122, 130 (2022). **En cambio, la vertiente procesal requiere que, de verse afectado algún derecho de propiedad o libertad de un ciudadano, este tendrá acceso a un proceso que se adherirá a los principios de justicia e imparcialidad**. *Indulac v. Unión*, 207 DPR 279, 296 (2021); *Aut. Puertos v. HEO, supra*, pág. 428. (Énfasis nuestro).

Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico especifica que la dimensión procesal de este derecho en el contexto adjudicativo exige como mínimo: (1) la notificación adecuada del proceso; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado, y (6) que la decisión se base en el expediente. *PVH Motor v. ASG, supra,* pág. 131; *Vázquez González v. Mun. de San Juan,* 178 DPR 636, 643 (2010).

De manera específica, con el propósito de salvaguardar tales derechos ante las agencias, la Sección 3.1 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, de la Ley 38-2017, 3 LPRA sec. 9641, según enmendada ("LPAU"), reconoce las siguientes garantías: (a) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial; y (d) derecho a que la decisión sea basada en el expediente.

En virtud de tales derechos, la Sección 3.9 de la LPAU, *supra*, regula el proceso de notificación ante los organismos administrativos:

> **La agencia notificará por escrito a todas las partes o a sus representantes autorizados e interventores la fecha, hora y lugar en que se celebrará la vista adjudicativa. La notificación se deberá efectuar por correo, ordinario o electrónico, o personalmente con no menos de quince (15) días de anticipación a la fecha de la vista, excepto que, por causa debidamente justificada consignada en la notificación, sea necesario acortar dicho período, y deberá contener la siguiente información:**
>
> > **(a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.**
> >
> > **(b) Advertencia de que las partes podrán comparecer por derecho propio, o asistidas de abogados incluyendo los casos de corporaciones y sociedades.**
> >
> > **(c) Cita de la disposición legal o reglamentaria que autoriza la celebración de la vista.**

(d) **Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas, y a los hechos constitutivos de tal infracción.**

(e) **Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista.**

(f) **Advertencia de que la vista no podrá ser suspendida**. 3 LPRA sec. 9649. (Énfasis nuestro).

En atención a los casos de incomparecencia, la Sección 3.10 de la LPAU, *supra*, dispone que si una parte debidamente no comparece a la conferencia con antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo, el funcionario que presida la misma podrá declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible. 3 LPRA sec. 9650.

No obstante, nuestro ordenamiento jurídico aspira que los casos se ventilen en sus méritos. *Neptune Packing Corp. v. Wackenhut Corp.*, *supra*, pág. 293. Para alcanzar esa finalidad, se favorece adoptar un "enfoque integral, pragmático y creativo" de las Reglas de Procedimiento Civil. *Mercado Figueroa v. Mun. San Juan*, 192 DPR 279, 286 (2015). De tal manera, se salvaguarda el debido proceso de ley de las partes, cuya finalidad permite que las personas tengan derecho a un proceso justo con todas las garantías de ley aplicables. *St. James Sec. v. AEE,* 2023 TSPR 149, 213 DPR ___ (2023); *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012).

### E. *Estándar de revisión administrativa*

Constituye norma reiterada que, los tribunales revisores apelativos están llamados a conceder amplia deferencia a las decisiones de las agencias administrativas. *Otero Rivera v. Bella Retail Group, Inc.* 2024 TSPR 70, 213 DPR ___ (2024); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020). Tales determinaciones gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración. *OEG v. Martínez Giraud*, 210 DPR 79, 88

(2022); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020).

Respecto a las determinaciones de hechos agenciales, los tribunales no intervendremos en estas, siempre y cuando surja del expediente administrativo evidencia sustancial que las respalda. *The Sembler Co. v. Mun. De Carolina,* 185 DPR 800, 821-822 (2012). La evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Capó Cruz v. Jta. de Planificación et al., supra.* 591.

No obstante, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675, según enmendada, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos". Cuando de conclusiones de derecho se trata, tenemos una amplia facultad de revisarlas completa y absolutamente. *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg.* P.R., 144 DPR 425, 436 (1997). Lo anterior, sin embargo, "no equivale a la sustitución automática del criterio e interpretación del organismo administrativo". *Capó Cruz v. Jta. de Planificación et al., supra,* pág. 591; *Rolón Martínez v. Caldero López,* 201 DPR 26, 36 (2018).

Ahora bien, la deferencia a las determinaciones agenciales no es infinita. No podemos imprimir un sello de corrección a las determinaciones o las interpretaciones administrativa irrazonables, ilegales o contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Nuestra deferencia cede cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Capote Rivera v. Voili Voila*

*Corporation*, 213 DPR 743 (2024); *Super Asphalt v. AFI y otro*, *supra*. No obstante, la determinación de una agencia merece deferencia sustancial aun cuando su interpretación no sea la única razonable. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011). Solo es posible sustituir "el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa". *Capote Rivera v. Voili Voila Corporation, supra; Capó Cruz v. Jta. de Planificación et al., supra*, pág. 591.

**III.**

En el recurso de epígrafe, Automobilia señala que en todo momento del caso exhibió interés en defenderse de las alegaciones presentadas en su contra. Al respecto aduce que: (1) presentó *Contestación a la Querella*, (2) solicitó producción de documentos a la parte querellante y (3) sometió la evidencia solicitada por ésta. Aduce que una vez advino en conocimiento de la *Resolución* dictada en anotación de rebeldía, peticionó el correspondiente relevo del dictamen por falta de notificación adecuada. Por tanto, argumenta que no procedía la anotación de rebeldía. En vista de ese contexto, sostiene que corresponde revocar la *Resolución* impugnada para dejar sin efecto la sanción drástica a la luz de la Regla 49.2 de Procedimiento Civil, *supra*.

En oposición, la parte recurrida manifiesta que Automobilia no compareció al primer señalamiento de vista administrativa ordenado por el DACo. Reconoce, no obstante, que en ese momento la representación legal de la parte querellada no fue debidamente citada. Sin embargo, destaca que con posterioridad la agencia citó a las partes para celebrar la vista agencial el 17 de junio de 2024. A pesar de ese nuevo señalamiento, destaca que la entidad querellada ni su abogado comparecieron a la vista, y tampoco presentaron alguna justificación al respecto. Ante esa realidad, asevera que la parte querellada abandonó el caso, pues optó por hacer caso omiso

a las órdenes del DACo y a la citación de vistas administrativa. Por consiguiente, considera que la agencia actuó correctamente al imponer la anotación de rebeldía.

Luego de examinar detenidamente el tracto procesal del caso y el marco legal previamente discutido, resolvemos que la agencia recurrida no incidió al imponer anotación de rebeldía en contra de la parte querellada. Veamos.

En atención a este recurso, abordaremos conjuntamente los señalamientos tres señalamientos de error presentados por Automobilia por estar estrechamente relacionados. En su contención, la parte querellada argumenta que su representante legal no recibió la notificación de la citación de vista administrativa y tampoco se le apercibió sobre la posibilidad de la imposición de una sanción drástica.

Al evaluar este argumento, notamos que el 8 de abril de 2024, el DACo emitió y notificó *Citación a Vista Administrativa* a celebrarse el 17 de mayo de 2024.[17] Sin embargo, tal como aduce la parte recurrente, no se incluyó a la representación legal del Automobilia en la *Notificación de Vista Administrativa*, aunque **Automobilia sí fue debidamente notificada y apercibida de que su incomparecencia podría acarrear la eliminación de sus alegaciones**. Precisado este escenario procesal, reconocemos que, en efecto, se emitió una nueva notificación. Consta en el Expediente Administrativo de la *Querella* 2024-0005836 que la corporación querellada y su representante legal sí fueron debidamente notificados del segundo señalamiento de la vista administrativa calendarizada para el 17 de junio de 2024.

**Llegada la fecha de la vista administrativa ni Automobilia ni su representación legal comparecieron ante el foro**

---

[17] Expediente administrativo de la *Querella* 2024-0005836.

**administrativo.** Ante esto, el DACo procedió a anotarle la rebeldía a la parte querellada a tenor con la sección 3.10 de la LPAU, la cual dispone que "[s]i una parte debidamente citada no comparece a la conferencia con antelación a la vista, **o a cualquier otra etapa durante el procedimiento adjudicativo** el funcionario que presida la misma **podrá declararla en rebeldía y continuar el procedimiento sin su participación**, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible" (Énfasis nuestro). Cabe destacar que la *Resolución* recurrida cumplió con esta disposición pues se notificó por escrito tanto a Automobilia como a su representación legal de la determinación, los fundamentos de esta y el recurso de revisión que tenía disponible.

A tenor con lo previamente discutido, es menester subrayar que, en el presente caso, la parte querellada ya había sido apercibida sobre el efecto de una incomparecencia de su parte a la vista administrativa. Automobilia fue debidamente notificada y citada a comparecer a la aludida vista, por lo cual el no presentarse a la misma representó un incumplió de la orden provista por el DACo. Por tal motivo, esta agencia no tuvo más remedio que anotarle la rebeldía y adjudicar la controversia sin la comparecencia de la parte querellada. Por ende, una lectura sosegada del derecho vigente y el historial del caso nos permite concluir que el DACo no se excedió sus facultades discrecionales al imponer la sanción de anotación de rebeldía. De igual manera, determinamos que la adjudicación de la controversia en el foro administrativo sin la comparecencia de la parte querellada no significó una violación al debido proceso de ley pues tanto la parte querellada como su representación legal fueron **citados y notificados de la celebración de la vista la cual se llevó a cabo el 17 de junio de 2024**. Por consiguiente, ninguno de los tres (3) errores imputados se cometieron.

**IV.**

Por los fundamentos que anteceden, **confirmamos** el dictamen administrativo recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones